**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**JENNIFER DROLLETTE,**

                               **Plaintiff,**

      **vs.**                                       **8:13-CV-280**
                                                    **(GTS/CFH)**

**CAROLYN W. COLVIN,**
**Commissioner of Social Security,**

                               **Defendant.**

_____

**APPEARANCES:**                                   **OF COUNSEL:**

Office of Mark A. Schneider                Mark A. Schneider, Esq.
57 Court Street
Plattsburgh, New York 12901
_Attorney for Plaintiff_

Social Security Administration            Robert R. Schriver, Esq.
Office of General Counsel                  Special Asst. U.S. Attorney
26 Federal Plaza, Rm. 3904
New York, NY 10278
_Attorney for Defendant_

**Christian F. Hummel, U.S. Magistrate Judge:**

## REPORT-RECOMMENDATION AND ORDER[1]

## INTRODUCTION

       Plaintiff Jennifer Drollette, brings the above-captioned action pursuant to 42 U.S.C. §

405(g) seeking a review of the decision from the Commissioner of Social Security

("Commissioner") that denied her application for disability insurance benefits ("DIB") and

supplemental social security income ("SSI").

_____

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

# PROCEDURAL BACKGROUND

On September 29, 2010, plaintiff filed an application for SSI benefits. (T.10)[2]. On

October 19, 2010, plaintiff filed an application for DIB. (T. 10). Plaintiff was 24 years old at the

time of the applications with prior work experience as an "unskilled laborer" . (T. 141). Plaintiff

claimed that she became unable to work beginning on March 30, 2008 due to bipolar disorder,

fibromyalgia, asthma and endometriosis. (T. 140). On November 30, 2010, plaintiff's

applications were denied and plaintiff requested a hearing by an Administrative Law Judge

("ALJ"), which was held on January 19, 2012. (T. 10). Plaintiff appeared with an attorney. On

March 30, 2012, the ALJ issued a decision denying plaintiff's claim for benefits. (T. 10-20). The

Appeals Council denied plaintiff's review on February 27, 2013, making the ALJ's decision the

final determination of the Commissioner. (T. 1-4). This action followed.

# DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to

individuals with "disabilities." The Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability

claims:

> "In essence, if the Commissioner determines (1) that the claimant is
> not working, (2) that he has a 'severe impairment,' (3) that the
> impairment is not one [listed in Appendix 1 of the regulations] that
> conclusively requires a determination of disability, and (4) that the
> claimant is not capable of continuing in his prior type of work, the
> Commissioner must find him disabled if (5) there is not another type
> of work the claimant can do." The claimant bears the burden of proof

---

[2]"(T.)" refers to pages of the Administrative Transcript, Dkt. No. 8.

on the first four steps, while the Social Security Administration bears
the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal

citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the

factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*,

221 F.3d at 131.  Substantial evidence has been interpreted to mean "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Id.*  The Court may also set

aside the Commissioner's decision when it is based upon legal error.  *Rosa v. Callahan*, 168 F.3d

72, 77 (2d Cir. 1999).

The ALJ found at step one that plaintiff has not engaged in substantial gainful activity

since March 30, 2008. (T. 12).  At step two, the ALJ concluded that plaintiff suffers from

fibromyalgia, a severe impairment. (T. 12).  At step three, the ALJ determined that plaintiff does

not have an impairment or combination of impairments that meets or medically equals one of the

listed impairments in the Listing of Impairments.  The ALJ then found the plaintiff had the

Residual Functional Capacity ("RFC") to "perform light work as defined in 20 CFR 404.1576(b)

and 416.967(b) except may not be exposed to extremes in temperature, secondhand smoke,

perfumes, chemicals, and any type of respiratory irritants".  (T. 16).  At step four, the ALJ

concluded that plaintiff had no past relevant work.  (T. 18). At step five, relying on the Medical-

Vocational Guidelines ("the grids") set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found

that plaintiff had the RFC to perform jobs existing in significant numbers in the national

economy. (T. 19). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T.19).

In seeking federal judicial review of the Commissioner's decision, plaintiff alleges that: (1) the ALJ failed to comply with the Regulations relating to the medical opinion evidence; (2) the ALJ's credibility analysis is flawed; (3) the ALJ's RFC assessment is not supported by substantial evidence; and (4) the ALJ committed reversible error because he failed to elicit testimony from a vocational expert. (Dkt. No. 12).

## I.   MEDICAL OPINION EVIDENCE

The Second Circuit has defined a treating physician as one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Coty v. Sullivan*, 793 F.Supp. 83, 85  86 (S.D.N.Y.1992) (quoting *Schisler v. Bowen*, 851 F.2d 43 (2d Cir.1988)). Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78  79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993). When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2). The Regulations also specify that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schaal v. Apfel*, 134 F.3d 501, 503  504 (2d Cir.1998).

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *See Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). "Similarly, treating source opinion can be rejected for lack of underlying expertise, or when it is brief, conclusory and unsupported by clinical findings, or when it appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy is reasonably suspected." *Orts v. Astrue*, 2012 WL 6803588, at *5 (N.D.N.Y. 2012) (citations omitted). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence. *See Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009).

Pursuant to 20 C.F.R. § 404.1527(1), every medical opinion, regardless of its source, must be evaluated.  However, the treating physician rule does not apply to consulting doctors. *See Jones v. Shalala*, 900 F.Supp. 663, 669 (S.D.N.Y. 1995); *see also Limpert v. Apfel*, 1998 WL 812569, at *6 (E.D.N.Y.1998).   An ALJ may rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of Social Security disability." *Williams v. Astrue*, 2011 WL 831426, at *11 (N.D.N.Y.2011)

5

(citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(C), 404.1527(f)(2), 416.912(b)(6), 416.913, and 416.927(f)(2)). The weight afforded a consultative opinion depends upon the thoroughness of the underlying medical examination and the degree of light the opinion sheds on the conflicting assessment of the treating physician. *Gray v. Astrue*, 2009 WL 790942, at *10 11 (N.D.N.Y. 2009) (citation omitted). While an ALJ must give "good reasons" if he does not give a treating physician's opinion sufficient weight, there is no similar requirement for consulting physicians. *Id*. (citing *Limpert*, 1998 WL 812569, at *6). If an ALJ relies upon a non-examining reviewer's opinion, that opinion must be supported by the bulk of the record. *See* Social Security Ruling ("SSR") 96 6p, 1996 WL 374180, *2 (July 1996); *see also Rocchio v. Astrue*, 2010 WL 5563842, at *14 (S.D.N.Y. 2010).

## A.    Robin Hinson, RPA

The administrative transcript contains treatment records from Robin Hinson, a registered physician's assistant at Adirondack Healthcare. From 2004 to 2011, P.A. Hinson treated plaintiff for a plethora of medical issues and complaints.[3] In 2008, plaintiff advised P.A. Hinson that she was 14 weeks pregnant.[4] (T. 600). On April 22, 2009, plaintiff complained that her "pointer finger was numb", swollen and red. Plaintiff stated that her fibromyalgia was "acting up" and questioned her estrogen levels. Plaintiff complained of headaches, lack of sleep and shortness of breath and "still bleeding post 8 weeks post delivery". Plaintiff's neurological examination was normal and she was diagnosed with fibromyalgia.[5] The P.A. prescribed Nicorette. (T. 597). On

---

[3] The records from 2004 through 2007 are illegible.

[4] The exact date is unclear due to the poor quality of the records.

[5] Fibromyalgia is pain and stiffness in the muscles and joints that either is diffuse or has multiple trigger points. *Dorland's Illustrated Medical Dictionary*, 711 (31st ed. 2007).

June 5, 2009, plaintiff returned complaining that her arms were numb. Upon examination, the P.A. noted that plaintiff's hand grasp was "5/5" on the right and "4/5" on the left. Plaintiff was alert and oriented with her memory, judgment and insight intact. P.A. Hinson prescribed Savella for her fibromyalgia and suggested that plaintiff undergo an EMG. On March 5, 2010, plaintiff returned for a follow up and complained of exhaustion, asthma and migraines. The P.A. advised plaintiff to continue taking Savella. (T. 589). On March 26, 2010, plaintiff advised P.A. Hinson that she was "ok" with her medications and sleeping better. Plaintiff was diagnosed with migraines and myalgia and told to continue Savella.

On April 27, 2010, plaintiff denied experiencing any side effects with her medication and said that she had more energy. She described her fibromyalgia as 30% improved. Upon examination, P.A. Hinson noted that plaintiff was in no acute distress, her speech was coherent and normal, she was oriented and a good historian. Plaintiff's mood, affect, memory, judgment and insight were normal. P.A. Hinson diagnosed plaintiff with myalgia and continued the prescription for Savella. On June 8, 2010, plaintiff returned for a medication follow up and to discuss the results of an x-ray of her shoulder and right knee. The x-rays, taken on May 3, 2010, were normal. Plaintiff's physical examination results were unchanged. On July 8, 2010, plaintiff returned for a follow up to discuss the results of the MRI of her shoulder. The MRI revealed no abnormality and the radiologist noted, "no explanation for symptoms". (T. 629). On August 31, 2011, the Social Security Administration sent a letter to P.A. Hinson requesting that she complete "the Enclosed MSS-Physical/Mental Form". (T.679). A handwritten note on the letter states, "[p]er Robin just send notes she is not filling out". On September 10, 2010, plaintiff was examined by P.A. Hinson after undergoing hemorrhoid surgery the day prior. Plaintiff was diagnosed with reflux. Plaintiff returned to P.A. Hinson periodically for ailments unrelated to the

issues at hand. The next relevant visit was September 29, 2011. Plaintiff complained of stomach pain and nausea. Upon examination, the P.A. noted that plaintiff's abdomen was normal and advised her to maintain a bland diet. On October 5, 2011, P.A. Hinson referred plaintiff for an ultrasound of her gallbladder. The results were normal. (T. 863).

Plaintiff claims that the ALJ failed to assign the appropriate weight to P.A. Hinson's opinion. Plaintiff alleges that the ALJ failed to consider plaintiff's length of treatment, frequency of visits, the nature of treatment, the consistency of P.A. Hinson's opinions with her treatment notes and the remaining record. The Commissioner disagrees arguing that P.A. Hinson is not a treating source, her notes do not support her diagnosis and, further, she declined to complete a Medical Source Statement.

Under SSA regulations, nurse practitioners and physician assistants are considered "other sources" rather than "medical sources." and, as such, "a physician assistant's opinion is 'clearly not entitled to the controlling weight afforded to treating physician's opinions'". *Lasiege v. Colvin*, 2014 WL 1269380, at*11 (N.D.N.Y. 2014) (citing 20 C.F.R. § 404.1513(a),(d)(1)). The ALJ "has the discretion to determine the appropriate weight to accord the other source's opinion based on all the evidence before him." *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir.1995). "The Second Circuit has long recognized that the opinions of a[n] [other source] who regularly treats a claimant is entitled to 'some extra consideration .'" *Lasiege*, 2014 WL 1269370, at *11 (citing *Duell v. Astrue*, 2010 WL 87298 (N.D.N.Y. 2010)).

Here, the ALJ summarily mentioned RPA Hinson at Step Two of the sequential analysis in his discussion of plaintiff's complaints of migraine headaches and Hinson's prescription for Topomax. (T. 13). The ALJ did not discuss any other aspect of P.A. Hinson's lengthy treatment and did not assign any weight to her opinions/diagnosis. Further, the ALJ failed to explain his

apparent refusal to assign any weight to P.A. Hinson's diagnosis. This omission is confounding given the fact that the ALJ described P.A. Hinson as plaintiff's "primary provider". (T. 15). Plaintiff treated with P.A. Hinson for nearly eight years. During that time, P.A. Hinson ordered several radiological films and scheduled plaintiff for nerve testing/EMGs. P.A. Hinson consistently diagnosed plaintiff with fibromyalgia and prescribed multiple medications for plaintiff's fibromyalgia, headaches and other complaints. Based upon plaintiff's treatment and relationship with P.A. Hinson, the ALJ should have, at the very least, mentioned and considered P.A. Hinson's records as "other source" evidence. *See White v. Comm'r of Soc. Sec.*, 302 F.Supp.2d 170, 176 (W.D.N.Y.2004) (citing 20 C.F.R. § 416.913(a); § 416.913(d)) (consideration of social worker's report was particularly important given that he was sole source that had a regular treatment relationship with the plaintiff). While the ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of "other sources", the ALJ has a duty to address and discuss the opinion. The Regulations require the ALJ to engage in a detailed analysis of P.A. Hinson's treatment and provide "good reasons" for discounting her opinions. *Stytzer v. Astrue*, 2010 WL 3907771, at *6 (N.D.N.Y. 2010). The ALJ's omission was not harmless error. *See Lopez v. Barnhart*, 2008 WL 1859563, at *15 (S.D.N.Y. 2008) ( "[the social worker's] observations would be relevant on the issue of the intensity and persistence of [the] plaintiff's symptoms, which in turn affect [the] plaintiff's capacity for work and hence the ultimate disability determination"). On remand, the ALJ must address P.A. Hinson's treatment and provide an explanation of what weight, if any, he assigns to that opinion.[6]

---

[6] The ALJ's duty to recontact P.A. Hinson is addressed *infra*.

**B.    Thierry Bonnabesse, M.D.**

On March 24, 2011, plaintiff was seen by Dr. Bonnabesse at Champlain Spine and Pain Management for an initial pain management consultation. (T. 869-70).  Plaintiff complained of chronic back pain radiating to her arms and hands.  Plaintiff stated that physical therapy did not help and that her pain was "5/10" and constant but worse when she picked up her daughter.  Upon examination, the doctor noted that plaintiff was in no acute distress and exhibited a normal gait. Plaintiff's vital signs were "grossly stable", and she was alert and oriented, pleasant and cooperative.  Plaintiff exhibited tenderness in her cervical and thoracic spine and a limited range of motion in her cervical spine.  The doctor diagnosed plaintiff with thoracic and cervical myofascial pain syndrome.  The doctor injected plaintiff with Lidocaine and Kenalog and recommended that she undergo MRI testing.  On May 2, 2011, plaintiff returned for a follow up examination and to discuss the results of her MRI films.  The doctor noted that the MRI of plaintiff's thoracic spine was normal and the films of her cervical spine revealed a slight bulge at C5-6.  Plaintiff's physical examination was unchanged.  The doctor noted that the pain in her neck could be "discogenic pain" and advised plaintiff to consider medial branch blocks.  Dr. Bonnabasse also felt plaintiff would benefit from epidural injections for her cervical spine. (T. 871).  The doctor noted that plaintiff may be suffering from arthritis rather than fibromyalgia.  The doctor stated: "it may be difficult to determine if she has fibromyalgia for some time, as it is largely a diagnosis of exclusion".  The doctor prescribed a fish oil supplement for her arthritic pain and suggested Savella.

On May 11, 2011, plaintiff received an epidural injection for her cervical radiculitis and discogenic pain.  Plaintiff's next visit with Dr. Bonnabasse was December 1, 2011.  The doctor noted that the gap in treatment was due to a lapse in insurance coverage.  Plaintiff complained of

pain between her shoulder blades. The doctor prescribed stretches and Tizanidine. On December 15, 2011, plaintiff had a cervical medial branch block. On January 9, 2012, plaintiff had a follow up visit and stated that she had excellent relief with the injection. (T. 879). Plaintiff was told to continue stretching and the doctor recommended additional injections.

Applying the regulations to the facts herein, Dr. Bonnabesse qualifies as one of plaintiff's treating physicians. Neither plaintiff nor the Commissioner dispute otherwise. For similar reasons discussed supra, the ALJ committed reversible error when he failed to mention, consider or discuss plaintiff's treatment with Dr. Bonnabesse. The ALJ neglected to assign any weight to the doctor's opinions/diagnosis and failed to explain why he disregarded the opinions entirely. While it is not clear that the ALJ was required to assign controlling weight to Dr. Bonnabesse's opinions, in light of the doctor's notes, the length of plaintiff's treatment and the type of treatment (i.e., injections), and diagnosis, the ALJ should considered this evidence and provided sufficient reasoning for rejecting the same. Upon remand, the ALJ is instructed to follow the regulations and develop the record accordingly.[7] *See Stytzer*, 2010 WL 3907771, at *7.

## C.    Drs. Schenkel and Cooper

In two brief sentences, plaintiff summarized her treatment with Dr. Schenkel and Dr. Cooper. Plaintiff merely states that Dr. Schenkel diagnosed her with Bipolar Disorder and that Dr. Cooper diagnosed plaintiff with fibromyalgia. Given the context of the brief, the Court assumes that plaintiff objects to the ALJ's failure to consider or assign weight to the opinions expressed by these doctors. The Court finds no error in this regard. Drs. Schenkel and Cooper did not treat plaintiff during the relevant period. Rather, they examined plaintiff in 2002 and 2006, respectively, six to ten years before the administrative hearing and four to eight years before the

---

[7] The ALJ's duty to recontact Dr. Bonnabesse is discussed *infra*.

period of disability at issue. *See Bergeron v. Astrue*, 2011 WL 6255372, at *8 (N.D.N.Y. 2011) (citing, *inter alia, Bromback v. Barnhart*, 2004 WL 1687223, at *7 (S.D.N.Y. 2004) (holding that the ALJ should not have relied on an evaluation that was made one year prior to the hearing)); *see also Saxon v. Astrue,* 781 F.Supp.2d 92, 103 (N.D.N.Y. 2011) (the ALJ properly refused to give significant weight to the doctor who did not provide any opinion or treatment during the time period at issue herein).

**D.     Duty to Recontact**

Upon review of the entire record and decision, the Court notes that the ALJ failed to assign any weight to any of plaintiff's treating sources or medical sources. Indeed, the ALJ failed to identify <u>any</u> source as a treating source. Rather, the ALJ confined his analysis of the opinion evidence to those expressed by the consultative examiners and only assigned weight to those opinions. There are no medical source statements or opinions regarding plaintiff's ability to perform work related functions by any of plaintiff's treating or medical sources. An ALJ has an obligation to develop the administrative record, including, in certain circumstances, recontacting a source of a claimant's medical evidence, *sua sponte*, to obtain additional information. *Lukose v. Astrue*, 2011 WL 5191784, at *3 (W.D.N.Y.2011) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998)). The ALJ will obtain additional evidence if he/she is unable to make a determination of disability based on the current record. 20 C.F.R. § 404.1527(c)(3). The Regulations provide:

> If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will

consider any additional evidence we receive together with the evidence we already have.

20 C.F.R. § 404.1527(c)(3).

This Circuit has consistently held that if the record does not contain any Medical Source Statement ("MSS") or RFC Assessment from plaintiff's treating physician, the ALJ has a duty to contact plaintiff's treating physician in an attempt to obtain an assessment. *See Pitcher v. Barnhart*, 2009 WL 890671, at *14 (N.D.N.Y. 2009). The Regulations provide that, "[t]he Commissioner should request an MSS from the claimant's treating physician if such a statement has not been provided". *Outley v. Astrue,* 2010 WL 3703065, at *4 (N.D.N.Y. 2010) (citing 20 C.F.R. § 416.912(d) (explaining that the Commissioner will "make every reasonable effort to help you get medical reports from your own medical sources, a medical report should include an MSS").

Based upon the regulations, P.A. Hinson is not a "treating source". Accordingly, the ALJ is not compelled to recontact P.A. Hinson. However, as discussed *supra,* Dr. Bonnabasse was a "treating physician" and thus, the ALJ should attempt to contact Dr. Bonnabasse to obtain an MSS.[8] Upon remand, the ALJ shall make such efforts and document the same.

## D.    Brett T. Hartman, Psy.D.

On February 22, 2007, at the request of the agency, plaintiff appeared for a psychiatric evaluation with Dr. Hartman. On November 11, 2010, plaintiff returned for a second evaluation. (T. 640). Plaintiff's history was reported by her grandmother. Plaintiff lived with her 20 month

---

[8] The administrative record contains treatment notes from additional medical providers. Dr. Lisa Marks treated plaintiff for reflux, a condition which the ALJ determined was not a severe impairment. Plaintiff has failed to assert any argument relating to the ALJ's assessment of Dr. Mark's records/opinions. Moreover, plaintiff did not object to the ALJ's determination, at Step Two of the sequential analysis, regarding plaintiff's reflux. Accordingly, on remand, the ALJ is not obligated to recontact Dr. Marks.

old child and husband and was last employed as a cook at Burger King. Plaintiff first received treatment for depression at age 14 and continued with treatment for bipolar disorder until 17. Plaintiff complained of pain "all over her body", shoulder pain, asthma and migraines. Plaintiff complained of difficulty sleeping but admitted that, with naps, she sleeps 8 to 9 hours per day. Plaintiff complained of feeling lethargic and depressed during winter months. Upon examination, the doctor noted that plaintiff was well groomed, her gait was slow, her speech was fluent and her affect was anxious. Plaintiff was coherent and alert and oriented. Plaintiff's concentration was mildly impaired and her memory was intact. Plaintiff's judgment and insight were fair. Dr. Hartman diagnosed plaintiff with Bipolar Disorder. The doctor opined that plaintiff has mild difficulty with attention, concentration and learning new tasks; moderate difficulty performing a variety of tasks and maintaining a regular schedule and dealing with the normal stressors of life. (T. 643).

The ALJ discussed Dr. Hartman's opinions:

> I give significant weight to Dr. Hartman's opinion that the claimant would be able to follow and understand simple directions and instructions; she has mild attention and concentration problems; and she has mild difficulty learning new tasks. However, Dr. Hartman's opinion that the claimant has "moderate" problems maintaining a regular schedule and dealing appropriately with the normal stresssors of life is not supported by her reported activities, her absence of outpatient psychiatric treatment since 2004; and her absence of psychotropic medications. Accordingly, I give little weight to this portion of Dr. Hartman's opinion. Indeed, in the earlier evaluation by Dr. Hartman on February 20, 2007, Dr. Hartman opined that the claimant had mild difficulty maintaining a regular schedule, and mild difficulty dealing appropriately with the normal stresses of life. (T. 14).

Plaintiff summarily and vaguely claims that the ALJ erred when he chose to credit only parts of Dr. Hartman's opinion that supported the ALJ's own conclusion.[9] Upon review of the record, the Court disagrees and finds that the ALJ's decision is supported by substantial evidence. The ALJ explained that he decided to assign "little weight" to Dr. Hartman's opinion that plaintiff would have moderate problems dealing with stress and maintaining a schedule because plaintiff was not undergoing psychiatric treatment or taking any medication. Moreover, the ALJ discussed plaintiff's daily activities and noted that they contradicted the doctor's assessment. To wit, plaintiff reported that she is able to groom herself, cook, clean, shop and do laundry. She also reported that she was able to manage money well, drive and has "several friends and gets along fairly well with family members". Most importantly, plaintiff stated that she spends her day caring for her 20 month old daughter. The ALJ properly noted that plaintiff's daily activities did not comport with the doctor's restrictions. *See Cruz v. Barnhart*, 2006 WL 1228581, at * 13 (S.D.N.Y. 2006) (holding that a finding of incapacity was inconsistent with the plaintiff's own conduct); *see also Coyle v. Apfel*, 66 F.Supp.2d 368, 377 378 (N.D.N.Y.1999) (holding that ALJ properly refused to afford controlling weight to physician's opinion that was inconsistent with the medical evidence and the evidence of plaintiff's daily activities). Contrary to plaintiff's assertions, the ALJ is free to rely upon portions of a medical opinion that are "internally consistent and well-supported by the objective medical evidence" and my reject portions that are contradicted by the doctor's own observations. *See Santiago v. Colvin,* 2014 WL 718424, at *19 (S.D.N.Y. 2014). Plaintiff does not cite to any portion of the record that arguably provides substantial support for Dr. Hartman's "moderate" limitations. Having explained his decision, with substantial support from the record, the Court finds no error on this issue.

---

[9] Plaintiff's argument is limited to one sentence in the brief.

**E.    Nader Wassef, M.D.**

At the request of the agency, on November 11, 2010, plaintiff appeared for an orthopedic consultation with Dr. Wassef. (T. 645). Plaintiff complained of lower back pain precipitated by lifting or walking that radiated to her entire left lower extremity. Plaintiff also complained of pain in her right shoulder and stated that she was diagnosed with fibromyalgia five years ago. Plaintiff stated that she cooked three times a week; cleaned once or twice a week; did laundry once a week; shopped twice a month and cared for her child. Plaintiff was able to groom herself and maintain relationships with friends and family. Upon examination, the doctor noted that plaintiff's gait was normal and that she walked without difficulty, was able to squat and needed no help on/off the examination table. Plaintiff's grip strength was 5/5 bilaterally and she exhibited a full range of motion in her cervical spine, shoulders and extremities. With respect to her lower spine, the doctor noted plaintiff's range of motion was full and SLR was negative. Plaintiff's spine was not tender and there were no spasms. Dr. Wassef diagnosed plaintiff with lower back pain, right shoulder pain and fibromyalgia. The doctor did not review any radiological films. The doctor opined that plaintiff is "experiencing lower back pain as well as right shoulder pain." He continued, "[s]he also has been diagnosed with fibromyalgia. She should not be exposed to extremes in temperature, second hand smoke, perfumes, chemicals, or any type of respiratory irritants". (T. 648).

The ALJ summarized Dr. Wassef's report and opinions. At the conclusion of step four of the sequential analysis, the ALJ stated, "[a]s for the opinion evidence, significant weight is given to Dr. Wassef's opinion". (T. 18). Plaintiff seemingly argues that the ALJ erred by failing to assign significant weight to the portion of Dr. Wassef's report where he states that plaintiff suffers from fibromyalgia, low back pain and right shoulder pain. The Commissioner disagrees and

argues that the ALJ assigned "significant weight" to the opinion and included Dr. Wassef's opinion in the RFC assessment. After careful review of the ALJ's decision, the Court finds that while the ALJ specifically assigned "significant weight" to the portion of Dr. Wassef's opinion involving respiratory irritants, it is unclear whether the ALJ considered Dr. Wassef's statements regarding fibromyalgia, right shoulder pain or lower back pain. However, this omission does not necessitate remand. Based upon a review of the objective examination results, it is clear that Dr. Wassef's "diagnosis" was based exclusively upon plaintiff's subjective complaints and recitation of her medical history. Dr. Wassef's own examination revealed no impairments or limitations substantiating plaintiff's pain. Dr. Wassef did not conduct, nor did he review, any clinical and laboratory diagnostic techniques. Based upon the substantial evidence of record, the ALJ did not err when he failed to assign significant weight to Dr. Wassef's "diagnosis". *See Morris v. Comm'r of Soc. Sec.* 2014 WL 1451996, at *4 (N.D.N.Y. 2014).

**F.     L. Blackwell**

On November 30, 2010, L. Blackwell completed a Psychiatric Review Technique for the agency. (T. 649). The description of the problem contained the request that Blackwell, "please review all available MER". Blackwell noted that plaintiff "has had no psychiatric treatment for the past seven years and gives no indication that she is seeking treatment at this time". Blackwell noted that plaintiff was independent with "basic adult activities of daily living" despite her lack of treatment.

The ALJ discussed Dr. Blackwell's review of the record and found:

> Dr. Blackwell's opinion is consistent with progress notes dated June 8, 2010 from plaintiff's primary provider that revealed that her mood was normal and her affect was normal. The claimant's memory was grossly intact and judgment and insight were grossly intact. I give significant weight to Dr. Blackwell's opinion since he has reviewed

17

the medical evidence of record; and his opinion is consistent with Dr. Hartman's mental status examination. (T. 15).

Plaintiff claims that the ALJ erred in assigning any weight to the opinion because the record contains no information regarding Blackwell's credentials or what evidence was reviewed/considered. The Commissioner states that Blackwell is a state agency psychologist and thus, the ALJ properly assigned significant weight to his "expert opinion".

"[T]he opinion of non-examining medical or psychological consultant may be accorded significant weight by the adjudicator 'insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence . . . , the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the . . . consultant . . .'". *Carter v. Comm'r of Soc. Sec.,* 2008 WL 1995122, at *5 (W.D.N.Y. 2008) (citing SSR 96-6p, 1996 WL 374180, at *2)). Here, Dr. Blackwell was asked to "review the MER". The Court assumes that "MER" refers to "medical evidence of record" however, Blackwell's report does not contain any references to any specific portion of the record. Moreover, Blackwell does not indicate which records were reviewed. *Cf. Gill v. Astrue,* 2011 WL 4352410, at *10 -11 (N.D.N.Y. 2011) (the non-examining board-certified psychiatrist reviewed plaintiff's medical records including the body of the record, answered interrogatories, and completed a Medical Source Statement of Ability to Do Work Related Activities with sources of evidence for his conclusion). Blackwell seemingly relied upon plaintiff's lack of psychiatric treatment and her activities of daily living to determine that she did not suffer from a severe mental impairment. Based upon the lack of information contained in Dr. Blackwell's assessment, the Court is constrained to find that it is supported by substantial evidence.

## II.    CREDIBILITY

Plaintiff claims that the ALJ failed to apply the appropriate legal standards in assessing her credibility. "The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her symptoms are consistent with the objective medical and other evidence. *See* SSR 96 7p, 1996 WL 374186, at *2 (SSA 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record. SSR 96 7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Saxon v. Astrue*, 781 F.Supp.2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and

whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and his own activities during the relevant period. *Howe Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y. 2007). The ALJ must also consider whether "good reasons" exist for failing to follow the prescribed treatment, e.g. religious objections, lack of ability to pay, significant risks associated with treatment. SSR 82 59; *see also Grubb v. Apfel*, 2003 WL 23009266, at *4 *8 (S.D.N.Y. 2003). The ALJ determines issues of credibility and great deference is given his judgment. *Gernavage v. Shalala*, 882 F.Supp. 1413, 1419, n. 6 (S.D.N.Y. 1995).

Plaintiff takes issue with the credibility analysis arguing that the objective medical evidence supports plaintiff's subjective testimony and further contends that "[n]one of plaintiff's treating sources stated that plaintiff was exaggerating her pain or limitations". Plaintiff does not cite to any portion of the record supporting her assertions. Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F. R. § 404.1529(c)(3)(i)-(iv), in assessing plaintiff's credibility. Disability requires more than mere inability to work without pain. *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir.1983) ("To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."). The record contains clear documentation that plaintiff suffers from pain, however, substantial evidence supports the ALJ's finding that the limiting effects of plaintiff's symptoms, including pain, were not entirely credible. *See Payne v. Astrue*, 2013 WL 550677, at *7 (N.D.N.Y. 2013). The ALJ discussed plaintiff's hearing testimony, medication, activities of daily living and ability to work and found plaintiff "not

credible" because her "statements concerning the intensity, persistence and limiting effects of these symptoms . . . are inconsistent with the above residual functional capacity assessment". (T. 18). The ALJ specifically referenced plaintiff's ability to care for her three-year old child, change diapers, use a computer, "cook once in awhile" and her ability to do laundry. (T. 17). The ALJ addressed plaintiff's medications and noted that her muscle relaxers make her sleepy. The ALJ discussed plaintiff's "seasonal depression" and her feeling that she did not need treatment for her depression and stress-induced anxiety. The ALJ discussed the frequency and intensity of plaintiff's complaints with respect to her back pain, migraines and endometriosis. (T. 18). Taken as a whole, the record supports the ALJ's determination that plaintiff was not entirely credible. The Court finds that the ALJ employed the proper legal standards in assessing the credibility of plaintiff's complaints of pain and adequately specified the reasons for discrediting plaintiff's statements.

### III.    RFC

Residual functional capacity is:

> "what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96 8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96 8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R.

§ 404.1545(a).  The ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e).

As discussed in Part I, *supra*, the ALJ failed to comply with the relevant regulations pertaining to the analysis of some of the medical opinion evidence.  Those errors compel the Court to remand this matter and further require the ALJ to reassess the RFC.   Plaintiff asserts additional allegations related to the ALJ's RFC assessment and contends that it is flawed due to the ALJ's failure to properly consider plaintiff's fibromyalgia, spinal/epigastric complaints, bipolar disorder, the side effects from her medication and plaintiff's limitations in reading and writing.   Because the ALJ erred in evaluating the opinions from plaintiff's treating physician, Dr. Bonnabesse and P.A. Hinson and erred when he assigned significant weight to the opinions expressed by Dr. Blackwell, the Court cannot decide whether the ALJ's finding at step four of the sequential evaluation was supported by substantial evidence.   Remand is appropriate in instances, such as this, when the reviewing court is "unable to fathom the ALJ's rationale in relation to the evidence in the record" without "further findings or clearer explanation for the decision." *Williams v. Callahan*, 30 F.Supp.2d 588, 594 (E.D.N.Y.1998) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996)).

**IV.    Vocational Expert**

Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability.  *Pratt v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996). Generally speaking, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his

burden by resorting to the applicable grids.[10] *Pratt,* 94 F.3d at 39. The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience". *Rosa*, 168 F.3d at 79. Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the applicable medical vocational guidelines (the grids)". *Id.* at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids.[11] *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986). The testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations-so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Id.* The use of the phrase "significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity". *Id.* at 606. Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."

---

[10] An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *see also Rodriguez v. Apfel*, 1998 WL 150981, at *10, n. 12 (S.D.N.Y.1998).

[11] A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(i), (ii), (iv), (v), 416.969a(a), (c)(i), (ii), (iv), (v); *see also Rodriguez* , 1998 WL 150981, at * 10, n. 12.

*Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 604). Therefore, when considering nonexertional impairments, the ALJ must first consider the question-whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony. *Samuels v. Barnhart*, 2003 WL 21108321, at *12 (S.D.N.Y.2003) (holding that the regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

The ALJ should elicit testimony from the expert by posing hypothetical questions. If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. *Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y.1996). The "[p]roper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform." *Lugo v. Chater*, 932 F.Supp. 497, 503 (S.D.N.Y.1996). Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir.1983).

As discussed *supra*, the ALJ failed to comply with the regulations and committed errors with respect to the medical opinion evidence. Thus, the ALJ's findings at the fifth step of the sequential analysis are affected. The Court has already determined that remand is necessary for further proceedings. Accordingly, any additional analysis may require the testimony of a vocational expert regarding the effect that any nonexertional impairments may have on the plaintiff's ability to perform basic work activities. *See Pronti v. Barnhart*, 339 F.Supp.2d 480, 487 (W.D.N.Y. 2004).

**CONCLUSION**

For the reasons stated above, it is hereby **RECOMMENDED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be **GRANTED**; and further, that the Commissioner's decision be **VACATED** and the matter **REMANDED** to the agency for further consideration consistent with this recommendation.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); FED R. CIV. P. 72, 6(a), 6(e).

It is further **ORDERED** that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.


Dated: June 5, 2014
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge